# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RONALD L. WILLIAMS and, | ) | |
| DANA M. MORGAN-WILLIAMS, | ) | |
| | ) | |
| Plaintiffs/Appellees, | ) | Case No. 13 C 2326 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| MARILYN O. MARSHALL, | ) | |
| Chapter 13 Trustee, | ) | Adv. No. 11 A 2415 |
| | ) | Bankr. Case No. 08 B 31707 |
| Defendant/Appellant. | ) | |

## OPINION AND ORDER

This bankruptcy appeal raises a discrete question of law: What does the Bankruptcy Code require a Chapter 13 trustee to do with undistributed funds received pursuant to a confirmed Chapter 13 plan when the Chapter 13 case is dismissed? The bankruptcy court held that the trustee is obligated to return the funds to the debtor. For the reasons stated below, the court affirms the decision of the bankruptcy court.[1]

## BACKGROUND

The facts are uncontested. Ronald Williams and Dana Morgan-Williams filed for relief under Chapter 13 on November 20, 2008. Marilyn Marshall was assigned to the case as the Chapter 13 trustee ("the Trustee"). On February 3, 2009, the bankruptcy court confirmed a plan that required the Williamses to pay the Trustee $4,625 per month for sixty months. The payments were made via payroll deductions.

---

[1] The district court is authorized to review appeals from the bankruptcy court under 28 U.S.C. § 158(a)(1). This case was originally referred to the bankruptcy court under 28 U.S.C. § 157.

The Williamses voluntarily dismissed their bankruptcy case on September 26, 2011. In total, they paid $155,879.58 to the Trustee prior to the dismissal. The Trustee distributed $136,770.12 to creditors as required by the plan but approximately $16,868.24 had not yet been distributed at the time of the dismissal.

On November 15, 2011, the Williamses commenced an adversary proceeding against the Trustee seeking return of the funds she held. On February 9, 2012, the Williamses moved for judgment on the pleadings in the adversary proceeding and, on March 13, 2013, the bankruptcy court granted judgment in favor of the Williamses. *See Williams* v. *Marshall (In re Williams)*, 488 B.R. 380 (Bankr. N.D. Ill. 2013). The Trustee appealed.

## ANALYSIS[2]

The legal question raised by this appeal arises from the interplay between two statutory provisions. On one hand, section 1326 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, requires a Chapter 13 trustee to distribute payments it receives from the debtor to creditors as set forth in the plan. 11 U.S.C. § 1326. The Trustee argues that it is obligated under this section to distribute the funds it held at the time of dismissal as provided in the plan. On the other hand, section 349(b)(3) of the Bankruptcy Code provides that dismissal of the case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case[.]" 11 U.S.C. § 349(b)(3). The Williamses argue that the voluntary dismissal of their case triggered section 349(b)(3) and thus the payments they made to the Trustee that were not distributed should revest to them. This is not a novel issue of law, but precedent is split between the positions taken by the Williamses and the Trustee.

---

[2] On appeal, a district court reviews a bankruptcy court's legal conclusions *de novo*. *See Adas* v. *Rutkowski*, No. 13 C 2517, 2013 WL 6865417, at *4 (N.D. Ill. Dec. 30, 2013) (citing *Meyer* v. *Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994)).

## I. Section 1326

Chapter 13 allows an individual debtor with regular income to adopt a repayment plan funded by future income. The debtor must file a proposed repayment plan within fourteen days after the Chapter 13 petition is filed. *See* Fed. R. Bank. P. 3015. The plan must provide for payments of fixed amounts to the Chapter 13 trustee. *See* 11 U.S.C. § 1322. Within thirty days after filing under Chapter 13, even if the plan has not yet been confirmed by the bankruptcy court, the debtor must begin making payments to the Chapter 13 trustee as provided for in the proposed plan. *See id.* § 1326(a)(1)(A).

Section 1326 of the Bankruptcy Code governs the Chapter 13 trustee's receipt of payments from the debtor and its distributions to creditors. Section 1326(a)(2) provides,

> A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor after deducting any unpaid [administrative expenses].

*Id.* § 1326(a)(2).[3] The Trustee argues that the second sentence of this section obligates her to distribute the funds she held after dismissal of the Williamses' case to their creditors. The Trustee's interpretation of the statute, however, would effectively read the word "such" out of the second sentence. *See In re Tran*, 309 B.R. 330, 337 (B.A.P. 9th Cir. 2004). The better reading of the provision limits the directive in the second sentence to payments made by the debtor to the trustee prior to the confirmation of the plan. *See In re Hamilton*, 493 B.R. 31, 35 (Bankr. M.D. Tenn. 2013) ("[Section] 1326 provides no direction to the trustee in cases such as

---

[3] The full text of paragraph (1)(A) referred to in section 1326(a)(2) is: "(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—(A) proposed by the plan to the trustee. . . ." 11 U.S.C. § 1326(a)(1)(A).

these that are dismissed after a plan has been confirmed."); *Tran*, 209 B.R. at 335 ("[Section] 1326 was not intended to address the disposition of funds received by a chapter 13 trustee after confirmation"); *see also In re Weatherspoon*, No. 11-46755-BDL, 2014 WL 61405, at *1 (Bankr. W.D. Wash. Jan. 3, 2014); *In re Potter*, No. 11-13013, 2013 WL 6196299, at **3-4 (Bankr. W.D. Tex. Nov. 27, 2013); *In re Majkowski*, No. 07-bk-199, 2011 WL 2652386, at *2 (Bankr. N.D. W. Va. July 6, 2011); *In re Parker*, 400 B.R. 55, 62 (Bankr. E.D. Pa. 2009); *In re Boggs*, 137 B.R. 408, 410 (Bankr. W.D. Wash. 1992).

The Trustee also cites section 1326(c) in support of her argument. It provides, "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." 11 U.S.C. § 1326(c). The court agrees with the bankruptcy court and the Ninth Circuit that this section "'was intended to address only the question of who should act as disbursing agent . . . . [It] does not address whether the Trustee was required to continue making distributions after the [ ] Chapter 13 case was dismissed.'" *Williams*, 488 B.R. at 385-86 (quoting *In re Nash*, 765 F.2d 1410, 1413 n.1 (9th Cir. 1985)); *see also In re Parrish*, 275 B.R. 424, 428 n.4 (Bankr. D.D.C. 2002).

Although courts may quibble over whether dismissal vacates the order confirming the plan, *compare Parrish*, 275 B.R. at 499, *with Nash*, 765 F.2d at 1413, it is irrefutable that a Chapter 13 plan is no longer enforceable after a case is dismissed. *See* Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel & Adam M. Goodman, CHAPTER 13 PRACTICE & PROCEDURE, § 13:11 (last updated Nov. 2013) ("Upon dismissal of a Chapter 13 case, a Chapter 13 plan is no longer in force[.]"); *cf. Wells Fargo Bank, N.A.* v. *Oparaji (In re Oparaji)*, 698 F.3d 231, 238 (5th Cir. 2012) ("Wells Fargo convincingly argues that, since the Bankruptcy Court dismissed Debtor's bankruptcy plan without granting a discharge, the court's acceptance of that plan was

4

negated and the parties were no longer bound by its terms."). Because the plan is no longer enforceable upon dismissal, the Trustee can no longer act "under the plan" as required by section 1326(c). Thus the court must look to section 349 for guidance on the effect of dismissal on funds held by the Trustee.

## II. Section 349

The effect of the dismissal of a Chapter 13 case is set forth in section 349 of the Bankruptcy Code. Section 349 "reinstates avoided transfers or voided liens made under certain provisions of the bankruptcy code [and] vacates certain types of orders made under the code." *Wiese* v. *Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 587 (7th Cir. 2009). In addition, section 349(b)(3) provides that dismissal of a Chapter 13 case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case[.]" 11 U.S.C. § 349(b)(3). The basic purpose of section 349(b) is to "undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." S. REP. NO. 95-989, at 49 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5835.

Since the court has determined that section 1326 is inapplicable here, the question is whether the assets held by the Trustee are "property of the estate" that should revest to the debtors under section 349(b)(3). The filing of a Chapter 13 petition creates an estate consisting of all of the debtor's legal and equitable interests in property at the time of the filing of the case and those acquired by the debtor after the filing (with some exceptions that are not relevant here), including a debtor's earnings. 11 U.S.C. §§ 541(a), 1306(b). The confirmation of a plan vests the property of the estate in the debtor. 11 U.S.C. § 1327(b). The Third Circuit recently

5

addressed at what point a debtor's postconfirmation payments to the Chapter 13 trustee leave the estate:

> [N]o provision in the Bankruptcy Code classifies any property, including post-petition wages, as belonging to creditors. . . . In the context of a Chapter 13 case, § 1327(b) vests all property of the Chapter 13 estate in the debtor on confirmation of the plan. Thus when the debtor transfers funds to the Chapter 13 trustee to fulfill its obligations under a confirmed plan (or, as here, wages are assigned directly to the Chapter 13 trustee under a garnishment order), the funds become part of the estate, and the debtor retains a vested interest in them. Though creditors have a right to those payments based on the confirmed plan, the debtor does not lose his vested interest until the trustee affirmatively transfers the funds to creditors.

*In re Michael*, 699 F.3d 305, 312-13 (3d Cir. 2012); *see also In re Slaughter*, 141 B.R. 661, 663 (Bankr. N.D. Ill. 1992) (citing *Nash*, 765 F.2d at 1414); *cf. In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997) (earnings of a debtor necessary to fulfillment of a plan are property of the estate under the control of the trustee).[4]

Further, despite the language in section 349(b)(3) that indicates that property should be revested in the entity in which it was vested prior to *commencement of the case*, it does not matter whether the funds held by the Chapter 13 trustee at the time of dismissal were part of the prepetition estate or became part of the estate postpetition. *See Hamilton*, 493 B.R. at 39 ("Section 349(b)(3) is not ambiguous: At dismissal—unless the court, for cause, orders otherwise—all postpetition earnings of the debtor vest in the debtor."); *Slaughter*, 141 B.R. at 663 ("It would be anomalous to give prepetition property of the estate to the debtor under

---

[4] The Trustee cites to an article written by a bankruptcy judge in the Northern District of Illinois that comes to the opposite conclusion from this court and the bankruptcy court below—that a Chapter 13 trustee should distribute postconfirmation payments held at the time of dismissal of the case to creditors. *See* Judge Eugene R. Wedoff, *Chapter 13 Attorney Fees After Conversion or Dismissal*, THE MARSHALL CHRONICLES, Apr. 2011, at 1-2. Judge Wedoff relies on the premise that "once the debtor transfers property of the estate to the trustee, it is no longer 'property of the estate.'" *Id.* at 2. Although it need not address the arguments made in the article, the court accepts the Third Circuit's contrary reasoning with respect to the time at which property leaves the estate.

§ 349(b)(3) and postpetition property of the estate to creditors."); *see also Weatherspoon*, 2014 WL 61405, at *3. Because the funds held by the Trustee at the time of dismissal were still property of the estate, section 349(b)(3) operates to revest the funds in the debtors.

## III. Contrary Precedent

The cases in which the outcome is contrary to this court's decision generally hold that section 349(b)(3)'s directive to revest property of the estate in the debtor cannot "override the plain language" of section 1326(a)(2). *Parrish*, 275 B.R. at 429; *see also In re Darden*, 474 B.R. 1, 8 (Bankr. D. Mass. 2012). *Parrish* holds that section 349(b)(3) "revests the debtor with the funds *subject to* whatever restrictions § 1326(a)(2) imposes." *Parrish*, 275 B.R. at 427 (emphasis added). As discussed above, the court is convinced that section 1326(a)(2) is limited to postconfirmation distribution of the debtor's *preconfirmation* payments to a trustee. Thus *Parrish* and *Darden*'s main argument—that section 349(b)(3) cannot render section 1326(a)(2) a nullity—is not applicable because section 1326(a)(2) does not apply to the *postconfirmation* payments held by the Trustee in this case.

## IV. Policy Considerations

The Trustee and courts in other cases have expressed concern that requiring a Chapter 13 trustee to return funds to the debtor upon dismissal of the case will result in unfavorable policy outcomes. First, there is the concern that returning the assets to the debtor upon dismissal would "allow the debtor to take the money that was earmarked for creditors [ ] after tying creditors' hands by reason of the confirmed plan having been in place." *Parrish*, 275 B.R. at 429. Chapter 13 is a preferred course of action, however, and creditors should not be dissuaded from attempting repayment under Chapter 13 by rules that put them in a worse position after their attempt at repayment if it does not succeed. *See Bobroff* v. *Continental Bank (In re Bobroff)*, 766

F.2d 797, 803 (3d Cir. 1985) ("If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13 . . . a try will be greatly diminished."); *Slaughter*, 141 B.R. at 664 & n.4 (finding Chapter 13 debtors should be returned to position they were in had they not filed Chapter 13 and distinguishing *In re Lybrook*, 951 F.2d 136 (7th Cir. 1991)); *see also Hamilton*, 493 B.R. at 42; *Boggs*, 137 B.R. at 411.  Furthermore, section 349 allows the court to modify the effect of dismissal by "order[ing] otherwise for cause."  11 U.S.C. § 349.  Thus if a creditor or a trustee believes that the debtor is gaming the system by causing dismissal of its case, it can request that the bankruptcy court order the trustee to distribute the funds to creditors rather than return them to the debtor. *See, e.g., In re Hufford*, 460 B.R. 172, 178 (Bankr. N.D. Ohio 2011) (dismissal order requiring that the Chapter 13 trustee disburse funds on hand to creditors sufficient to overcome § 349(b)(3)'s revestment provision).

Second, the Trustee argues (and other courts have observed) that a rule requiring that a trustee return the funds on hand to the debtor upon dismissal may result in creditors' requesting more frequent (and thus inefficient) distributions.  While the court believes that Chapter 13 trustees generally are diligent in making payments to creditors so as not to amass large amounts at any one time, there are necessary exceptions to this rule.  In *Darden*, for example, an unresolved litigation delayed distribution of amounts to unsecured creditors. *Darden*, 474 B.R. at 4.  The *Darden* court held that because of the length of the delay, there was sufficient cause under section 349 for property of the estate to be paid to creditors rather than revest in the debtor upon the debtor's dismissal of the case. *Id.* at 12-14.  Such decisions should provide comfort to concerned creditors requesting more frequent distributions from the Chapter 13 trustee.  Also, the Third Circuit offered a few possible methods to decrease the effect of this type of ruling on

creditors, including a suggestion that creditors seek to insert a provision in the plan that payments made under the plan vest in the creditors upon payment to the Chapter 13 trustee. *See Michael*, 699 F.2d at 317 n.9.[5]

Finally, some courts have raised the concern that requiring a Chapter 13 trustee to return undistributed payments to the debtor upon dismissal of the case could "theoretically require the creditors to return all payments received under the plan to the debtor." *Parrish*, 275 B.R. at 433 (citing *Mehan* v. *Sparkman (In re Mehan)*, No. 96-11385 DWS, 2000 WL 1010577, at *4 (Bankr. E.D. Pa. July 19, 2000)). The court finds the "slippery slope" argument unpersuasive in this context. The Williamses are not attempting to recover payments from their creditors, which obviously would be impracticable, and the court has not seen an instance in which such an attempt was made. *See Tran*, 309 B.R. at 335.

## CONCLUSION

For the reasons stated above, the court affirms the ruling of the bankruptcy court.

Date: April 11, 2014

---

[5] The Third Circuit declined to opine, however, on whether such a provision would be sufficient to mandate that assets held by the trustee at the time of dismissal be distributed to creditors rather than revesting in the debtor.

9